ESTATE OF DALE STINE, GREG STINE, PERSONAL
REPRESENTATIVE, APPELLEE AND CROSS-APPELLANT, V.
CHAMBANCO, INC., APPELLANT AND CROSS-APPELLEE.

560 N.W.2d 424

Filed February 28, 1997.   No. S-95-531.

Forrest F. Peetz, of Peetz & Peetz, for appellant.

Boyd W. Strope, of Strope, Krotter & Gotschall, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

## INTRODUCTION

Dale Stine and Chambanco, Inc., entered into an agreement for the sale of shares of stock in Ewing Agency, Inc. This agree-

ment provided for an additional $25,000 payment to Stine that would be payable when Chambanco received that sum pursuant to a separate agreement between Stine and Ewing Agency. Stine is now deceased; Chambanco has not paid this additional payment to the estate of Stine.

Following a bench trial, the district court entered judgment in favor of the estate of Stine and against Chambanco. Even though the trial court found that the contract language at issue was not ambiguous and that it created a condition precedent to Chambanco's obligation to pay, it concluded that the condition ought to be construed to run for a reasonable period of time and that Chambanco already had a reasonable time to pay.

Chambanco appealed to the Nebraska Court of Appeals, and that court, with one judge dissenting, determined in a memorandum opinion that the trial court committed plain error in finding that the contract between Stine and Chambanco is not ambiguous. See *Estate of Stine v. Chambanco, Inc.*, 4 Neb. App. xviii (case No. A-95-531, August 23, 1996). As a result, the Court of Appeals reversed the judgment and remanded the cause for further proceedings, and ordered the district court to receive parol evidence in order to determine the intentions of the parties. *Id.* Chambanco successfully petitioned this court for further review.

Because we conclude that the agreement creates a condition precedent, we determine that Chambanco's obligation to pay the additional amount under the agreement has not yet arisen. Accordingly, we reverse the decision of the Court of Appeals and remand this matter to that court with directions to remand the cause to the district court with directions to dismiss.

## FACTUAL BACKGROUND

This action involves a dispute over a contract whereby Chambanco purchased shares of stock in Ewing Agency from Stine. Ewing Agency was formed by Stine and two other individuals, H.D. Huff and Ed Chandler, for the purpose of purchasing a bank. Stine, Huff, and Chandler invested time and labor in the formation of Ewing Agency, but did not invest money. Stine, Huff, and Chandler recruited numerous other individuals to invest money in Ewing Agency.

The individuals who invested money in Ewing Agency received both stock and debentures, which could be redeemed to recover their cash investment. Stine, Huff, and Chandler received stock, but did not receive debentures because of alleged adverse tax consequences that would have been associated with receipt of a debenture without a corresponding investment of money.

Stine, Huff, Chandler, and the remaining investors entered into a stock purchase agreement on October 3, 1975. The stock purchase agreement included a right of first refusal, which generally provided that if any shareholder intended to sell or encumber his or her stock, the stock had to be offered first to Ewing Agency and then to the other shareholders of Ewing Agency. If either Ewing Agency or the other shareholders elected to exercise their right to purchase the stock, then the purchase price was computed according to a formula set out in the stock purchase agreement.

The stock purchase agreement also included an adjustment provision to compensate Stine, Huff, and Chandler for their "sweat equity," which provided for a payment in lieu of the fact that they received no debentures. The adjustment provision provided as follows:

> 4. Adjustment. In the event of an offer [pursuant to the right of first refusal set out in the stock purchase agreement] made by Dale Stine, H. D. Huff or [Ed] Chandler, or in the event of the death of Dale Stine, H. D. Huff or Ed Chandler, the purchase price as computed in accordance with paragraph 3 [of the stock purchase agreement] shall be increased by $25,000 as to Dale Stine and as to H. D. Huff, and shall be increased by $8,250 as to Ed Chandler.

On January 17, 1986, Stine entered into a contract with Chambanco for the sale of his shares of Ewing Agency stock. Ralph Adams, who was also a shareholder of Ewing Agency, signed the contract as a representative of Chambanco. Stine presented this agreement with Chambanco to Ewing Agency and to the other shareholders of Ewing Agency, pursuant to the stock purchase agreement, and both Ewing Agency and the other shareholders declined to exercise their right of first refusal. As

a result, Stine and Chambanco proceeded according to their contract.

The January 17, 1986, contract between Stine and Chambanco included the following provision, which is the source of controversy in this case:

> 2. The purchase price for such shares shall be the amount of One Hundred Twenty-Five Thousand Dollars ($125,000.00), payable in cash on the date of closing; provided, however, that the purchase price shall be reduced by the amount of Eight Thousand Five Hundred Dollars ($8,500.00) in the event [of an unrelated contingency] . . . . Buyer further recognizes that Seller's stock is subject to a Stock Purchase Agreement with Ewing Agency, Inc. and the remaining stockholders, one of the provisions of which Agreement entitles Seller to the payment of Twenty-Five Thousand dollars ($25,000.00) over and above the formula price set forth in said Agreement. Said right to payment follows the stock of Seller. Buyer agrees to pay to Seller the sum of Twenty-Five Thousand Dollars ($25,000.00) *when received* by Buyer from Ewing Agency, Inc., or any other source.

(Emphasis supplied.)

Stine and Chambanco also executed an amendment to their contract on February 12, 1986. The amendment provided that Chambanco would pay Stine interest on the purchase price of the stock at a rate of 10½ percent from January 17, 1986, through the date of payment. This amendment also includes a handwritten notation in the bottom left-hand margin which reads, "I agree to no interest from Ralph Adams. Dale Stine."

On December 28, 1986, Chambanco paid Stine $125,000. Subsequently, Chambanco purchased the majority of the remaining stock in Ewing Agency. Stine never received the additional $25,000 from anyone, and there is no evidence that Chambanco ever paid Stine any interest on the $125,000.

Stine died on July 25, 1992. The personal representative for Stine's estate made a demand for the $25,000, which was refused by Chambanco. The personal representative then brought suit against Chambanco and Ewing Agency, seeking

payment of the $25,000, plus interest as provided in the amendment to the contract between Stine and Chambanco.

The personal representative filed a motion for partial summary judgment, and Chambanco and Ewing Agency filed a motion for summary judgment. The district court granted the personal representative's partial summary judgment, finding that the action was one seeking legal, not equitable, relief; that the statute of frauds was not a defense to the action; and that proper consideration was given for the contract between Stine and Chambanco. The district court denied Chambanco and Ewing Agency's motion. The district court also found that the stock purchase agreement and the contract between Stine and Chambanco were not ambiguous and that parol evidence would not be admissible at trial to alter the meanings of the two contracts.

At trial, Robert Routh, the attorney who drafted the documents involved in this case, testified on behalf of the estate. The estate also introduced numerous exhibits. Chambanco and Ewing Agency both moved for a directed verdict at the conclusion of the estate's case, and the court overruled the motions. Chambanco and Ewing Agency both rested without presenting evidence.

The district court set out its findings of fact and conclusions of law in a written order. The district court found that Chambanco was still legally "alive" and had not sold or encumbered the shares of stock purchased from Stine. The district court further found that Stine's sale to Chambanco triggered Stine's right to receive the $25,000 adjustment payment under the stock purchase agreement. The district court also found that Chambanco had not received the sum of $25,000 "attributable to Dale Stine's right of payment from Ewing Agency, Inc., or from any other source." The district court concluded, however, that the language in the contract between Stine and Chambanco "clearly shows the intent of the parties" was that Chambanco would receive the $25,000 within a reasonable time. Finally, the district court found that the contractual obligation of the contract between Stine and Chambanco was only against Chambanco, and, therefore, Ewing Agency was dismissed from

the action. Accordingly, the district court entered judgment against Chambanco for $25,000.

Chambanco timely appealed to the Court of Appeals, alleging that the district court erred in denying Chambanco's motion for directed verdict, in finding that Chambanco had an obligation to pay Stine $25,000, and in resolving an issue not preserved in the pretrial order. The estate cross-appealed in the Court of Appeals, alleging that the district court erred in failing to award interest pursuant to the amendment to the contract between Stine and Chambanco. As noted in the introduction, the Court of Appeals determined that the contract between Stine and Chambanco was ambiguous, and reversed the judgment and remanded the cause to the district court for further proceedings to determine the intentions of the parties.

## ASSIGNMENTS OF ERROR

Chambanco asserts that the Court of Appeals erred in (1) concluding that the district court committed plain error in finding that the terms of the subject contract were unambiguous and (2) ordering further proceedings to determine the intention of the parties.

## SCOPE OF REVIEW

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Daehnke v. Nebraska Dept. of Soc. Servs., ante* p. 298, 557 N.W.2d 17 (1996); *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996).

## ANALYSIS

While Chambanco's motion for directed verdict is more properly termed a motion to dismiss for want of evidence, since this was a bench trial, such motion is treated the same as a motion to direct a verdict in a jury trial. See, *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996); *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996). When a trial court sustains a motion to dismiss, it resolves the controversy as a matter of law and may do so only when the facts are such that

reasonable minds can draw only one conclusion. *Hill v. City of Lincoln, supra.*

Paragraph 2 of the agreement between Stine and Chambanco provides that "[Chambanco] agrees to pay to [Stine] the sum of Twenty-Five Thousand Dollars ($25,000.00) when received by [Chambanco] from Ewing Agency, Inc., or any other source." Both parties acknowledged at argument in this court that the controverted language is unambiguous. Chambanco asserts that the district court correctly determined that this contractual language creates a condition precedent. Conversely, the personal representative contends that this language creates a promise to pay a present and existing debt. In essence, the personal representative asserts that the October 3, 1975, stock purchase agreement and the January 17, 1986, contract, when read together, create an obligation to pay $150,000—i.e., $125,000 paid on December 28, 1986, and the additional $25,000 to be paid within a reasonable period of time.

In interpreting a contract, we must first determine, as a matter of law, whether the contract is ambiguous. *Daehnke v. Nebraska Dept. of Soc. Servs., supra*; *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Daehnke v. Nebraska Dept. of Soc. Servs., supra*; *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995). A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Daehnke v. Nebraska Dept. of Soc. Servs., supra*; *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994).

As a matter of law, we agree with the parties that the January 17, 1986, Stine-Chambanco contract is unambiguous. The contract requires Chambanco to pay Stine $25,000 *when* Chambanco receives the money from Ewing Agency or any other source. We determine that this language is not susceptible of at least two reasonable but conflicting interpretations or

meanings. See *Daehnke v. Nebraska Dept. of Soc. Servs., supra.* Thus, the Court of Appeals erred when it found plain error in the district court's ruling that the contract language at issue is unambiguous.

However, we must determine whether Stine and Chambanco intended to create a condition or a promise with the phrase, "[Chambanco] agrees to pay to [Stine] [$25,000] when received by [Chambanco] from Ewing Agency, Inc., or any other source." We have held that the existence of a condition precedent depends upon the intent of the parties as gathered from the words they have employed. *Lee Sapp Leasing v. Catholic Archbishop of Omaha,* 248 Neb. 829, 540 N.W.2d 101 (1995). Terms such as "if," "provided that," *"when,"* "after," "as soon as," "subject to," "on condition that," and similar phrases are evidence that performance of a contractual provision is a condition. *Harmon Cable Communications v. Scope Cable Television,* 237 Neb. 871, 468 N.W.2d 350 (1991).

In the instant case, the obligation to pay the other $25,000 to Stine or his estate is triggered *when* it is received from Ewing Agency or some other source, and there is no dispute that payment has never been received by Chambanco. There is absolutely nothing ambiguous about this contractual language, and parol evidence will not be allowed to vary the meaning of a document under such circumstances. If the contents of a document are not ambiguous, the document is not subject to interpretation and will be enforced according to its terms. *Lee Sapp Leasing v. Catholic Archbishop of Omaha, supra.*

The district court correctly found that the January 17, 1986, agreement provided that Stine's right to the additional payment would follow the stock into Chambanco's hands. However, where an agreement provides for the payment of money upon the happening of certain contingencies, the cause of action will usually not arise until occurrence of the conditions. *Id.* As a general rule, a condition must be exactly fulfilled before liability can arise on the contract. *Harmon Cable Communications v. Scope Cable Television, supra.* In the present case, Chambanco has not received $25,000 from Ewing Agency or any other source. Consequently, it is undisputed that the condition has not been fulfilled and that the obligation to pay has not yet arisen.

In departing from the general rule, and finding that it was the intent of the parties that Chambanco would receive the $25,000 within a reasonable time, the district court relied on this court's holding in *In re Estate of Backes*, 122 Neb. 531, 240 N.W. 596 (1932). However, the instrument at issue in *In re Estate of Backes* was a promissory note, evidencing a present and existing indebtedness at the time it was executed and delivered, that provided for payment when the maker sold a specified tract of land in the future. The future event was merely a convenient time for payment. In contrast, the contract in the instant case did not create a present and existing obligation. Instead, the contract created a condition precedent that must be fulfilled before any obligation to pay arises. Because the condition has not occurred, the district court erred in (1) finding that the contract should be construed such that Chambanco had an obligation to pay Stine within a reasonable time and (2) not granting Chambanco's motion to dismiss.

## CONCLUSION

For the foregoing reasons, we conclude that the contract language at issue is unambiguous and creates a condition precedent to Chambanco's obligation to pay the additional $25,000. Because Chambanco has not received payment from Ewing Agency or any other source, its obligation to pay the additional $25,000 has not yet arisen. Thus, we reverse the decision of the Court of Appeals and remand this matter to that court with directions to remand the cause to the district court with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.