ETHANAIR CORPORATION, A NEBRASKA CORPORATION, APPELLANT, V. RICHARD N. THOMPSON, APPELLEE.
561 N.W.2d 225

Filed April 4, 1997.    No. S-95-527.

Leonard Dunker for appellant.

Terrance A. Poppe and Joel G. Lonowski, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellee.

White, C.J., Caporale, Wright, Connolly, and Gerrard, JJ., and Livingston, D.J.

Connolly, J.

Appellant Ethanair Corporation brought this action against appellee Richard N. Thompson contending that he usurped a corporate opportunity through his private dealings. The district court for Lancaster County held that Ethanair could not bring this action because it was a dissolved corporation that had not been properly revived in accordance with statutory requirements. The issue before us is whether Ethanair has the legal capacity to file a lawsuit. We affirm, concluding that Ethanair is a dissolved corporation and is neither a corporation de facto nor a corporation de jure and, therefore, does not have the capacity to bring this legal action.

## BACKGROUND

Ethanair filed articles of incorporation with the Secretary of State on November 6, 1987. These articles were signed by four incorporators, including Thompson. According to the articles, the purpose of Ethanair's formation was threefold: to produce ethanol from agricultural products, to produce feed and other products from ethanol and its coproducts, and to engage in any lawful activities allowed by the Nebraska Business Corporation Act. In furtherance of these intentions, Ethanair made several efforts to purchase an ethanol plant, known as the ADC-1 plant, located in Hastings, Nebraska.

Prior to April 1990, Ethanair, along with several other corporations, made several bids for the ADC-1 plant. All bids were rejected. However, those entities that had made previous bids were subsequently contacted and offered the opportunity to resubmit another bid. This information was conveyed in a letter personally addressed to Thompson in which he was invited, as a previous bidder or as one having recently inquired about the ADC-1 plant, to offer another bid for the plant. Although Thompson, as president of Ethanair, desired to submit another bid, the new bidding process required each bidder to submit a $200,000 deposit with the bid. Because Ethanair had no assets and could not afford to place such a large deposit with its bid, it began negotiations with Chief Industries, Inc., whereby the cor-

porations would purchase the ADC-1 plant together. Thompson was informed by the chief executive officer of Chief on May 13 that Chief had no desire to enter into such a business agreement with Ethanair.

On May 14, 1990, Thompson drove to Chief's corporate offices in Grand Island, Nebraska. That was the final day in which bids for the ADC-1 plant could be submitted. After discussions with executives at Chief, Thompson entered into an agreement whereby the bidding rights to the plant which were possessed by Ethanair were assigned to Chief. This assignment document was signed by Thompson as president and individually. According to article II of the assignment, Ethanair and Thompson were eligible to present a bid for the plant. At the same meeting, Thompson also entered into a compensation agreement with Chief that provided him with compensation should Chief's bid be accepted. According to the terms of this agreement, Chief was to pay Thompson $850,000 over a period of time should the bid be accepted. If the bid was accepted but Chief was not provided with notification that a bank loan to the plant would remain in place, Thompson would receive $350,000 over a period of years.

Although delays occurred and Chief's original bid was not accepted, Chief did eventually purchase the ADC-1 plant and paid Thompson $850,000. Thompson did not pay any of these funds to Ethanair. As a result, Ethanair brought this action against Thompson, alleging that his actions in assigning the bidding rights to Chief constituted a conversion of corporate funds in violation of his fiduciary duty as Ethanair's president, and therefore sought injunctive relief and recovery of the money paid to Thompson. In his answer, Thompson asserted, inter alia, that there was a defect in parties plaintiff and that Ethanair does not have legal capacity to file a legal cause of action.

The evidence adduced at trial revealed that Ethanair was dissolved on April 16, 1990, by the Secretary of State for nonpayment of occupation taxes. However, on October 25, 1991, a certificate of revival or renewal was filed with the Secretary of State by William A. Scheller as vice president and Stanley Sipple as secretary-treasurer of the corporation. This document was not signed by Thompson as president, nor was it filed with

the Lancaster County clerk's office. In addition, the testimony of the shareholders of Ethanair established that no shareholder meetings were held, no board of directors was elected, no stock was issued, and no corporate activity was carried on after Ethanair was dissolved. Thompson thus moved for a directed verdict alleging that Ethanair was not properly revived at the time he entered into the agreements with Chief and, as such, that he did not usurp a corporate opportunity.

The district court agreed and issued an order dismissing the claim against Thompson. In granting what was considered to be a motion to dismiss, the district court found that Ethanair lacked the legal capacity to bring this action because it was not properly revived. Furthermore, the court held that the evidence failed to establish that Ethanair's activities after the dissolution created a corporation de jure or a corporation de facto.

## ASSIGNMENTS OF ERROR

Ethanair contends the district court erred in the following particulars: (1) finding that Ethanair was not a corporation de jure, (2) finding that Ethanair was not a corporation de facto, (3) finding that Thompson could collaterally attack the legal existence of Ethanair, and (4) granting Thompson's motion to dismiss.

## STANDARD OF REVIEW

A motion to dismiss in a bench trial is the same as a motion to direct a verdict in a jury trial. See *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997).

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996); *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997); *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997).

## ANALYSIS

The issue before us is whether Ethanair has the capacity to bring this action against Thompson. Ethanair contends the district court erred in failing to determine that only the State of Nebraska can collaterally attack the legal existence of a corporation. Ethanair also contends that even if its legal existence can be challenged by Thompson, the record establishes that it was either a de jure or a de facto corporation capable of bringing the present action.

Generally, the legal existence of a corporation can only be brought into question by the state. However, this court has held that a private party may collaterally attack the legal stature of a corporate entity if it has been dissolved and retains neither a de jure nor a de facto existence. *Christensen v. Boss*, 179 Neb. 429, 138 N.W.2d 716 (1965). See, also, *Baum v. Baum Holding Co.*, 158 Neb. 197, 62 N.W.2d 864 (1954); *Parks v. James J. Parks Co.*, 128 Neb. 600, 259 N.W. 509 (1935). Thus, in addressing Ethanair's assignment of error concerning the ability of Thompson to collaterally attack its legal existence, we must first determine whether Ethanair was either a de jure or a de facto corporation at the time this action was initiated.

### CORPORATION DE JURE

A corporation de jure is created when there has been both an apparent attempt to perfect an organization under law and substantial compliance with statutory requirements. *Baum v. Baum Holding Co., supra; Parks v. James J. Parks Co., supra.* As noted above, Ethanair filed articles of incorporation on November 6, 1987. However, due to the failure of the corporation to pay occupation taxes, the Secretary of State dissolved Ethanair. A certificate of revival or renewal was subsequently filed by Scheller and Sipple on October 25, 1991.

The revival of a dissolved corporation is governed by statute. According to Neb. Rev. Stat. § 21-20,135 (Reissue 1991), a corporation that is dissolved for failure to pay taxes may procure a revival of its corporate existence by filing a certificate requesting such with the Secretary of State. This certificate is to be signed by the corporation's last acting president and secretary or treasurer unless one of those officers should neglect or fail

to do so, in which case successors to those individuals may be elected. See Neb. Rev. Stat. § 21-20,140 (Reissue 1991). Ethanair failed to comply with these requirements, as evidenced by the fact that the certificate of revival or renewal filed with the Secretary of State was not signed by Thompson, the last acting president of Ethanair. Although the certificate was signed by Scheller as vice president and Sipple as secretary-treasurer, the record is void of any election whereby Thompson was replaced as president.

In addition to this requirement, Neb. Rev. Stat. § 21-20,136 (Reissue 1991) requires, in part, that a copy of the revival certificate "shall be recorded in the office of the county clerk in and for the county in which the original articles of incorporation of such corporation are recorded." Likewise, Neb. Rev. Stat. § 21-20,143 (Reissue 1991) provides:

> Such certificate for the renewal and continuance of the existence of any such corporation shall be filed in the office of the Secretary of State, who shall furnish a certified copy of the same under his hand and seal of office; such certified copy shall be recorded in the office of the county clerk of the county in which the principal office of such corporation is located in this state . . . .

The record before us reveals that neither of these requirements was met. According to the testimony adduced at trial, at no time did an officer or shareholder of Ethanair file a copy of the revival certificate in Lancaster County or any other county in this state.

Finally, we note that Neb. Rev. Stat. § 21-20,142 (Reissue 1991) states that after a revival of a corporation, the then president shall call a meeting of the stockholders, who shall elect a board of directors and officers. Each shareholder of Ethanair who testified at trial stated that no such meetings or elections occurred.

Ethanair failed to strictly comply with the statutory requirements for revival. Indeed, based on Ethanair's failure to properly file a certificate of revival with either the Secretary of State or the proper county clerk and its failure to hold required meetings and elections, we determine that it was not in substantial compliance with the statutory revival process and is thus not a

corporation de jure. As such, the first assigned error is without merit.

## CORPORATION DE FACTO

A corporation de facto exists when there has been a good faith attempt to organize the corporation, statutory requirements have been colorably complied with, and the corporation has exercised the functions or conducted the business that it was organized to perform. *Thies v. Weible*, 126 Neb. 720, 254 N.W. 420 (1934); *Haas v. Bank of Commerce*, 41 Neb. 754, 60 N.W. 85 (1894).

As our previous cases establish, the existence of a de facto corporation depends, to a great extent, on the degree that the entity conducts itself in accordance with its articles of incorporation. For example, a de facto corporation was found to exist in *Parks v. James J. Parks Co.*, 128 Neb. 600, 259 N.W. 509 (1935), where the evidence established that the corporation in question held an organizational meeting, elected officers, and subsequently carried on the business of the corporation. Likewise, the corporation at issue in *Thies v. Weible, supra*, was held to be a de facto corporation even though two of its incorporators were infants because it was continuously engaged in carrying on the business it was incorporated to perform. Moreover, the corporation had adopted and used a corporate seal and had made and published statements as to its financial condition. See, also, *Haas v. Bank of Commerce, supra* (recognizing bank as de facto corporation when it conducted business under articles of incorporation for period of years).

In the instant case, the evidence does not support Ethanair's contention that it is a de facto corporation. Unlike the above-cited cases, Ethanair has conducted virtually no business since its dissolution. Testimony from the shareholders of the corporation disclose that there were no shareholder meetings and that Ethanair did not possess a board of directors. Furthermore, no corporate activity took place with the exception of the bringing of this lawsuit. In addition to having no assets, the tax returns of Ethanair for the years 1990 through 1993 reflect no business activity whatsoever. In light of this continuous inaction, we agree with the district court's conclusion that Ethanair was not

a de facto corporation. The second assignment of error is therefore without merit.

## COLLATERAL ATTACK OF CORPORATE EXISTENCE

As set forth above, a third party may collaterally attack the legal existence of a corporate entity if that entity has been dissolved and is neither a de jure nor a de facto corporation. Thus, in accordance with our conclusion that Ethanair is neither a de jure nor a de facto corporation, we conclude that the district court did not err in allowing Thompson to challenge the ability of Ethanair to bring this action as a corporation.

## GRANTING OF MOTION TO DISMISS

Remaining is Ethanair's assertion that the district court erred in granting Thompson's motion to dismiss. A motion to dismiss in a bench trial is the same as a motion to direct a verdict in a jury trial. See *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997). A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996); *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996).

As set forth above, Ethanair is dissolved and no longer exists as a corporate entity. Where a corporation has been dissolved and no longer exists, its capacity to sue or be sued terminates. *Farmers Union Co-op Assn. v. Mid-States Constr. Co.*, 212 Neb. 147, 322 N.W.2d 373 (1982). See, also, *Keefe v. Glasford's Enter.*, 248 Neb. 64, 532 N.W.2d 626 (1995) (holding that unless statute provides otherwise, no law action can be maintained by or against dissolved corporation). Because Ethanair has been dissolved, its ability to bring a legal action against Thompson was extinguished as a matter of law. For this reason, the district court correctly dismissed this action.

## CONCLUSION

While the evidence might call into question the business practices of Thompson, Ethanair's dissolution and failure to adequately meet the statutory revival requirements require us to

conclude that the district court committed no error in dismissing this action, and we therefore affirm.

AFFIRMED.