# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3376

_____

Three River Telco,                              *
                                                *
    Plaintiff - Appellee,                      *
                                                *
v.                                              *    Appeal from the United States
                                                *    District Court for the
TSFL Holding Corporation, Inc.,                 *    District of Nebraska.
formerly known as Symetrics                      *
Industries, Inc.,                               *
                                                *
    Defendant - Appellant.                     *

_____

Submitted:  April 15, 2002

Filed:  August 22, 2002

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Three River Telco ("Three River") is a rural cooperative that provides local telephone service in northern Nebraska. In 1996, to induce Three River to purchase a new switching system, American Digital Switching, Inc. ("ADS") promised to repurchase the switch if Three River was dissatisfied with it. That promise was guaranteed by ADS's parent corporation, Symetrics Industries, Inc. ("Symetrics"). Four years later, Three River commenced this diversity action to enforce the repurchase guaranty against Symetrics' successor-in-interest, TSFL Holding

Corporation ("TSFL"). After trial, the jury returned a verdict of $527,577.40 in favor of Three River. TSFL appeals, raising a single issue that was properly preserved by timely motions to the district court[1] for judgment as a matter of law -- whether Three River failed to prove the occurrence of a condition precedent to TSFL's guaranty obligation. Reviewing the denial of TSFL's motion for judgment as a matter of law de novo, we affirm. See Manning v. Metro. Life Ins. Co., 127 F.3d 686, 689 (8th Cir. 1997) (standard of review).

Following rather lengthy negotiations, Three River and ADS entered into an Equipment Contract pursuant to which ADS agreed to sell and install a "Centura 2000" switching system for the total contract price of $815,400. The Contract's effective date was November 14, 1996. The Centura 2000 switching system was installed in 1997 but never performed to Three River's satisfaction. After extensive efforts to remedy the problems proved unsuccessful, ADS began downsizing its operations in December 1998. Three River then purchased a replacement switch from another vendor for more than one million dollars. In October 2000, Three River filed this action to enforce Symetrics' guaranty of ADS's repurchase obligation.

The repurchase obligations of ADS and Symetrics were reflected in an October 2, 1996, letter from the president of ADS to Three River:

> If Three River[] Telephone company is dissatisfied with the Centura 2000 switching system anytime during the next three years, ADS will purchase it back for the full price paid, including material, software, and installation. . . . I realize . . . you may be concerned about our ability to purchase back a system. Therefore, *I will purchase a bond, similar to the bid bond we have already purchased, to guarantee the availability of funds. This type of bond is unusual, and I may not be able to obtain*

---

[1]The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska.

> *it. In the event that no bond is available, then Symetrics has agreed to directly back this guarantee.*

(Emphasis added.) The October 2 letter was made an addendum to the Equipment Contract. The president of Symetrics signed both the October 2 letter and an acknowledgment that the letter was a part of the Equipment Contract. Symetrics thereby became a guarantor of ADS's repurchase obligation.

In Nebraska, a guaranty is "a contract by which the guarantor promises to make payment if the principal debtor defaults." Northern Bank v. Dowd, 562 N.W.2d 378, 379 (Neb. 1997). A guaranty may be either absolute (unconditional), or subject to one or more conditions. On appeal, TSFL argues that Symetrics' (and therefore TSFL's) guaranty obligation was subject to a condition precedent, namely, the inability of ADS to obtain a bond funding its primary repurchase obligation. Under Nebraska law, one type of condition precedent is "a condition which must be fulfilled before a duty to perform an existing contract arises." Schmidt v. J.C. Robinson Seed Co., 370 N.W.2d 103, 107 (Neb. 1985). According to TSFL, the phrasing of the October 2 letter -- "In the event that no bond is available, then Symetrics has agreed to directly back this guarantee" -- conclusively establishes a condition precedent. See Estate of Stine v. Chambanco, 560 N.W.2d 424, 429 (Neb. 1997) (terms such as "if," "provided that," "subject to," "on condition that," and similar phrases are evidence of a condition).

Three River argues that ADS's obligation to attempt to obtain a funding bond was merely a promise, not a condition precedent. We disagree. "Whether contractual language is deemed conditional or promissory generally depends upon the intention of the parties." Harmon Cable Communications of Neb. Ltd. P'ship v. Scope Cable Television, Inc., 468 N.W.2d 350, 359 (Neb. 1991). Here, the obvious intent of the language in question was to clarify that, if ADS did obtain a funding bond, Three River must look to the bonding company, not ADS's parent corporation, to fund the

guaranty. In other words, the language in the October 2 letter, "[i]n the event . . . then," was intended to ensure that Symetrics was a tertiary obligor, not a co-guarantor with the bonding company. Only a condition precedent accomplishes that objective.

In general, a party seeking to enforce a conditional guaranty must plead and prove that all conditions have been satisfied. See 38 Am. Jur. 2d Guaranty § 114. Likewise, under Nebraska law, the party seeking to enforce a contract must plead and prove that all conditions precedent have been satisfied. See Neb. Rev. Stat. § 25-836; K&K Pharmacy, Inc. v. Barta, 382 N.W.2d 363, 365 (Neb. 1986).

In this case, TSFL has not raised a pleading issue; indeed, it did not include Three River's complaint in the record on appeal. Therefore, we assume that Three River alleged that all conditions precedent to TSFL's guaranty obligation were satisfied. Likewise, TSFL does not appeal the district court's refusal to instruct the jury "that Three River needed to establish that ADS attempted to obtain a bond similar to a bid bond in favor of Three River." Thus, the only issue before us concerns the sufficiency of the evidence, that is, whether TSFL's motion for judgment as a matter of law should have been granted because Three River failed to prove that this condition precedent was satisfied. Our review of this issue must be deferential to the jury's verdict:

> We resolve all factual conflicts in favor of the nonmoving party [Three River], giving that party the benefit of all reasonable inferences and assuming as true all facts favoring that party which the evidence tended to prove. . . . [W]e will affirm the denial of a motion for [judgment as a matter of law] if a reasonable jury could differ as to the conclusions that could be drawn [from the evidence].

Manning, 127 F.3d at 689-90.

Perhaps inadvertently, Three River presented no direct evidence at trial that ADS did not obtain a funding bond to ensure its ability to repurchase the Centura 2000 switching system if Three River was dissatisfied with its purchase. However, the Equipment Contract also obligated ADS to furnish a satisfactory contractor's bond within thirty days after the contract took effect. On December 13, 1996, ADS submitted a contractor's bond in which *Symetrics as surety* promised to hold Three River harmless from any damage incurred by reason of ADS's failure to perform any term or condition of the Equipment Contract, as amended. In denying TSFL's motion for judgment as a matter of law, the district court observed:

> [Counsel for Three River's] point is that a bond was obtained here. It wasn't a bond that is contemplated by [the October 2] letter. Therefore, there is a showing in the record that something was obtained, but not that which would cover this guarantee.

We agree with this analysis of the evidence. Symetrics acted as surety on the contractor's bond. That in itself was unusual.[2] It suggests that ADS could not obtain a contractor's bond without the backing of its parent corporation, and that Symetrics elected to act as surety rather than obtain a bond on its subsidiary's behalf. If ADS could not obtain a contractor's bond from an independent bonding company, it most likely could not obtain the "unusual" funding bond described in the October 2 letter. And it would have been pointless for Symetrics to act as surety for ADS on a funding bond, when Symetrics had already guaranteed the repurchase obligation in the October 2 letter. In these circumstances, a reasonable jury could infer that ADS was

_____

[2]The Equipment Contract was on forms prescribed for contracts funded by the Rural Utilities Service (formerly the Rural Electrification Administration) under the Rural Electrification Act of 1936. See 7 U.S.C. § 6942(a) and (c)(1)(A). The Contract required a contractor's bond "in conformance with the requirements of 7 CFR Part 1788, Subpart C." The ADS bond did not conform because Symetrics was not a surety listed in Department of Treasury Circular 570. However, as no REA funds were involved in this project, Three River could waive that non-conformity.

not able to obtain a funding bond, the condition precedent to TSFL's guaranty liability.  Therefore, the district court properly denied the motion for judgment as a matter of law.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.