to an assignment or release of West Gate's security interest did not affect the court's consideration of the breach of contract or warranty claim in this case, we need not review the correctness of such determination on appeal. The district court's determinations that there was no consideration and that the Abandonment document was not an enforceable contract were correct. We therefore affirm the judgment of the district court.

AFFIRMED.

---

IN RE ESTATE OF RALPH GREB, DECEASED.
FIRST NEBRASKA TRUST COMPANY, PERSONAL REPRESENTATIVE
OF THE ESTATE OF RALPH GREB, DECEASED, APPELLEE AND
CROSS-APPELLEE, V. RICHARD GREB, APPELLEE AND
CROSS-APPELLANT, AND NANETTE J. WRIGHT,
APPELLANT AND CROSS-APPELLEE.

___ N.W.2d ___

Filed June 20, 2014.    No. S-13-543.

1. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.
3. **Decedents' Estates: Appeal and Error.** The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous.
4. **Joint Tenancy: Banks and Banking.** Neb. Rev. Stat. § 30-2718(a) (Reissue 2008) provides that a multiple-party account may be with or without a right of survivorship between the parties.
5. **Decedents' Estates: Banks and Banking: Contracts.** Neb. Rev. Stat. § 30-2719(a) (Reissue 2008) provides that a contract of deposit establishes the type of account if the contract contains provisions in substantially the form provided by that subsection.
6. **Corporations: Collateral Attack.** A private party may collaterally attack the legal stature of a corporate entity if it has been dissolved and retains neither a de jure nor a de facto existence.
7. **Corporations.** A de facto corporation exists when there has been a good faith attempt to organize the corporation, statutory requirements have been colorably complied with, and the corporation has exercised the functions or conducted the business that it was organized to perform.

8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

9. **Courts: Jurisdiction: States.** Before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.

10. \_\_\_\_: \_\_\_\_: \_\_\_\_. In answering any choice-of-law question, the court first asks whether there is any real conflict between the laws of the states.

11. **Jurisdiction: States.** In conflict-of-law analysis, an actual conflict exists when a legal issue is resolved differently under the law of two states.

12. **Contracts.** For the resolution of conflict of laws involving contracts, the Nebraska Supreme Court has adopted the Restatement (Second) of Conflict of Laws § 188 (1971).

Appeal from the County Court for Lancaster County: Thomas W. Fox, Judge. Affirmed.

Stanton N. Beeder and Kara J. Ronnau, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Timothy L. Moll, Ramzi J. Hynek, and Sheila A. Bentzen, of Rembolt Ludtke, L.L.P., for appellee First Nebraska Trust Company.

J.L. Spray and Christina L. Usher, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellee Richard Greb.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

We decide three principal issues regarding the final order distributing the probate estate of Ralph Greb in kind to two beneficiaries. One beneficiary appeals on two issues; the other cross-appeals on the third issue. First, two multiple-party bank accounts were correctly excluded from the probate estate, because the challenger failed to meet her burden of proving lack of survivorship rights. Second, because a corporation dissolved by the State of Nebraska for failure to pay taxes continued as a de facto corporation, Ralph's gifts of corporate stock during his lifetime were not part of his probate estate. Finally, because one beneficiary was not obligated to pay indebtedness owed to the estate by the beneficiary's spouse,

the lower court did not err in ordering distribution of the asset in kind to both beneficiaries. We affirm the county court's order of distribution.

## BACKGROUND

Ralph died on December 25, 2010. He was survived by his two children, Richard Greb and Nanette J. Wright. Ralph's will appointed Richard as his personal representative. However, due to disagreements between Richard and Nanette regarding the estate, First Nebraska Trust Company (FNTC) was retained to serve as personal representative.

Ralph's will provided for his estate to be distributed to a "Family Trust," of which Richard was appointed trustee. Once the trust was funded, its assets were to be distributed equally to Richard and Nanette. But in order to avoid administrative fees and expedite the distribution of the estate, FNTC and Richard (as trustee) entered into an "Acknowledgment and Consent," providing for the direct distribution of the estate's assets to the beneficiaries.

FNTC conducted an inventory and investigation of the estate's assets. It filed a short-form inventory on March 27, 2012, and an amended verified petition for approval of distributions on April 12. In the amended petition, FNTC indicated that the estate was the holder of various debts valued at $234,739, which it denoted and we will refer to as "Wright Notes." As evidence of the Wright Notes, FNTC attached a series of correspondence between Ralph, Nanette, and Nanette's husband, John Wright. The correspondence included a letter signed by John, acknowledging various debts he owed to Ralph; a listing of the various debts signed by John and Ralph; an unsigned letter from Nanette, disputing the listing of the debts; and two repayment checks signed by Nanette.

FNTC acknowledged the existence of an ongoing dispute between Richard and Nanette as to the enforceability of the Wright Notes. Rather than attempting to collect the debts, FNTC proposed to distribute the Wright Notes equally to Richard and Nanette in kind. Richard filed an objection, claiming that the Wright Notes were joint and several liabilities of Nanette and John. He therefore requested that the

Wright Notes be converted into cash or cash equivalent and distributed solely to Nanette, with him receiving an equivalent value in cash.

Nanette filed her own objection to FNTC's proposed distribution. Her objection focused on three specific properties identified by FNTC in the short-form inventory of the estate. These properties included a U.S. Bank account, a Wells Fargo Bank account, and 301 shares of stock in G & G Sheet Metal Company (G&G).

On the short-form inventory, FNTC indicated that the U.S. Bank and Wells Fargo Bank accounts were multiple-party accounts owned by Ralph and Richard as joint tenants. It further identified the accounts as nonprobate property. But Nanette contended that no documents or evidence had been presented demonstrating that the accounts were held with rights of survivorship. She therefore asserted that the proceeds of the accounts should be distributed equally to the beneficiaries, rather than passing solely to Richard.

As to the 301 shares in G&G, Nanette alleged that the short-form inventory reflected neither Ralph's true number of shares nor the value of those shares at the time of his death. In support of these allegations, Nanette claimed that G&G had been involuntarily dissolved on April 16, 1999, by Nebraska's Secretary of State for nonpayment of taxes. She therefore contended that any transfer of shares, payment of dividends, or extension of loans by the corporation after that date was void and should be considered a nullity. As a result, the estate would be reattributed any shares Ralph had transferred after G&G's dissolution, and the value of those shares would be increased as funds G&G had loaned or paid out were returned to the corporation.

The county court conducted a hearing on Richard's and Nanette's objections and the proposed distribution. A representative from FNTC testified as to its efforts to determine the ownership of the U.S. Bank and Wells Fargo Bank accounts. FNTC first requested copies of the signature cards for the accounts. Although neither bank complied, U.S. Bank produced copies of the account's statements. A subpoena duces tecum was served upon Wells Fargo Bank, and it produced

a signature card from Citizens State Bank with an account number identical to the number of the Wells Fargo Bank account. The signature card from Citizens State Bank showed that the account was opened as a joint tenancy with a right of survivorship.

Based upon its investigation into the ownership of the accounts, FNTC confirmed that it became clear that U.S. Bank and Wells Fargo Bank treated the accounts as joint tenancies with rights of survivorship. Richard's testimony also confirmed that the accounts were held with rights of survivorship. Richard explained that he was an owner of the U.S. Bank account when it was opened and that the account was with a right of survivorship. As to the Wells Fargo Bank account, Richard testified that Ralph added him as a joint tenant in 1996. Ralph wanted Richard to have the account's funds upon Ralph's death in order to equalize his and Nanette's inheritances.

With respect to Ralph's shares in G&G, the county court received evidence that Ralph was G&G's sole shareholder until 2000. Between 2000 and 2006, Ralph transferred 699 of his initial 1,000 shares to Richard and Richard's wife, Nancy Greb. As noted above, at the time of Ralph's death, he possessed 301 shares of G&G's stock.

Richard then testified as to the legal status and activities of G&G. He had served as an officer of the corporation and sat on its board of directors since at least 1985. He stated that he was unaware of the corporation's dissolution until 2012. He further averred that Ralph had been unaware of the dissolution at the time of his death. The county court received evidence that G&G continued to operate normally notwithstanding its dissolution. The corporation continued to hold annual meetings of its shareholders and board of directors, file annual income tax returns, conduct small jobs and consulting work, issue new stock certificates, pay dividends, and extend loans to officers and other business entities.

Finally, the county court received testimony from Nanette. She first confirmed that she was a resident of Arizona. As to the Wright Notes, she explained that she became aware of the obligation John owed to Ralph through hearing that John and Ralph had invested in several properties. As to her liability on

the Wright Notes, she stated that she was never asked to sign an obligation or a guarantee or to undertake repayment. She further averred that she had no intention of assuming John's obligations to Ralph.

The county court entered an order on May 22, 2013, overruling Richard's and Nanette's objections and approving the proposed distribution of the estate. The court first addressed Richard's claim that the Wright Notes should be distributed solely to Nanette. The court recognized that a conflict of laws existed between Nebraska and Arizona as to Nanette's liability on the Wright Notes, but found that Nebraska law applied. And because Nanette could not be held liable on the notes under Nebraska law, the court approved their equal distribution in kind.

As to the U.S. Bank and Wells Fargo Bank accounts, the county court noted that the contracts of deposit for the accounts had not been offered into evidence and that the accounts' proceeds were in Richard's possession. It therefore concluded that Nanette had the burden of proving that Ralph did not intend for the accounts to be with rights of survivorship. Finding that Nanette had failed to meet this burden, the court concluded that the accounts were not part of the estate.

With respect to Ralph's shares in G&G, the county court recognized that the corporation had been dissolved, but concluded that it continued as a de facto corporation after its dissolution. Consequently, the court found that Nanette, as a private party, could not attack its status or activities. The court further noted that the transfers of stock made by Ralph to Richard and Nancy were expressly authorized by Neb. Rev. Stat. § 21-20,155(2)(b) (Reissue 2012). That section provides that dissolution of a corporation shall not prevent the transfer of its shares or securities.

Finding Richard's and Nanette's objections to be without merit, the county court ordered FNTC to proceed with the proposed distribution of the estate. Nanette filed a timely notice of appeal, and Richard cross-appealed. We moved the case to our docket pursuant to statutory authority.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

We consolidate and restate Nanette's numerous assignments of error in the county court's May 22, 2013, order. First, the court erred in excluding the U.S. Bank and Wells Fargo Bank accounts from the probate estate. Second, the court erred in (1) finding that Nanette lacked standing to contest G&G's corporate status or activities and (2) failing to find that G&G's postdissolution activities were unlawful.

We have also consolidated and restated the multiple assignments of error in Richard's cross-appeal. The court erred in (1) finding that Nanette was not liable on the Wright Notes and (2) approving the equal distribution of the notes in kind.

## STANDARD OF REVIEW

[1-3] An appellate court reviews probate cases for error appearing on the record made in the county court.[2] When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[3] The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous.[4]

## ANALYSIS

We first address Nanette's assignments of error regarding the U.S. Bank and Wells Fargo Bank accounts and G&G's corporate status and activities. We then turn to Richard's cross-appeal and his assignments of error with respect to the distribution of the Wright Notes.

### U.S. BANK AND WELLS FARGO
### BANK ACCOUNTS

Nanette contends that the county court erred in excluding the U.S. Bank and Wells Fargo Bank accounts from the probate estate. It is uncontested that Richard was a joint owner of the

---

[2] *In re Estate of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013).

[3] *Id*.

[4] *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009).

accounts and that he was in possession of the proceeds of both accounts on the hearing date.

[4] At the hearing, FNTC's officer correctly recognized that the ownership of the accounts' proceeds upon Ralph's death did not automatically flow from Richard's status as a joint owner. Neb. Rev. Stat. § 30-2718(a) (Reissue 2008) provides that a multiple-party account may be with or without a right of survivorship between the parties. And in a probate proceeding, the determination of whether a multiple-party account is with or without a right of survivorship turns upon the contract of deposit.

[5] Neb. Rev. Stat. § 30-2719(a) (Reissue 2008) provides that a contract of deposit establishes the type of account if the contract contains provisions in substantially the form provided by that subsection. The sample account form of § 30-2719(a) includes provisions for designation of various features, including ownership ("Single-Party Account" or "Multiple-Party Account"); rights at death (including, inter alia, "Right of Survivorship," "POD (Pay on Death) Designation," or single-party account passing at death as part of party's estate); and "Agency (Power of Attorney) Designation."[5] Thus, in *Eggleston v. Kovacich*,[6] we determined that the district court erred in looking to extrinsic evidence when the contract of deposit contained provisions substantially in the form provided by § 30-2719(a) and established that the account was with a right of survivorship.

But when a contract of deposit does not contain provisions substantially in the form provided by § 30-2719(a), the account (including rights at death) is governed by the type of account that most nearly conforms to the depositor's intent.[7] Moreover, in *Eggleston*, we noted that extrinsic evidence of the depositor's intent is relevant only when the contract of deposit is not in substantially the form provided by § 30-2719(a).[8]

─────────────

[5] See *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

[6] *Id*.

[7] See § 30-2719(b).

[8] *Eggleston, supra* note 5.

Where the contract does not follow the statutory form and, thus, extrinsic evidence of the depositor's intent is permitted, the party not in possession of the proceeds of a disputed account has the burden to move forward with evidence of the depositor's intent in creating the account.[9] And in a dispute regarding the ownership of an account arising from the depositor's death, such intent must be proved by a greater weight of the evidence only.[10]

Nanette argues that the contracts of deposit for the U.S. Bank and Wells Fargo Bank accounts were submitted into evidence and established that the accounts were without rights of survivorship. As to Wells Fargo Bank, we agree that a contract of deposit was submitted into evidence. The signature card at the time of creation of the account by Wells Fargo Bank's predecessor, Citizens State Bank, references contractual terms and contains the signatures of the account's owners, Ralph and his wife. This signature card clearly states that at that time, the account was owned as joint tenants with a right of survivorship. Thus, the county court's finding that no contract was in evidence was not entirely accurate. But this signature card was silent as to Richard's relationship to the account. Thus, in that sense, the court correctly determined that the material contract was not in evidence.

Although the Citizens State Bank signature card specified that the account included the right of survivorship, the card was not a contract of deposit in substantially the form provided by § 30-2719(a). It did not contain provisions for designation of ownership type or agency. Thus, the signature card itself was not determinative of whether the account was with or without a right of survivorship. Rather, under § 30-2719(b), evidence of Ralph's intent was also relevant in determining the ownership of the account and its proceeds.

Because Richard was in possession of the proceeds of the Wells Fargo Bank account, Nanette had the burden of proving that Ralph did not intend the account to be with a right of survivorship. She failed to do so. The signature card indicated

---

[9] *Krzycki v. Krzycki*, 284 Neb. 729, 824 N.W.2d 659 (2012).

[10] See *id*.

that the account was originally opened with a right of survivorship. And Richard testified that Ralph added him as a joint owner with the intent that he would become the sole owner of the account upon Ralph's death. Thus, the evidence established that Ralph intended the account to be with a right of survivorship. Because Richard and Ralph were the joint owners of the account upon Ralph's death, the account and its proceeds passed to Richard as his sole property. Nanette's assertion that the account was part of the estate is without merit.

As to the U.S. Bank account, the contract of deposit was not offered into evidence. The only documents pertaining to the U.S. Bank account received by the county court were the monthly statements associated with the account. While the statements list both Ralph and Richard as owners, they do not contain contractual terms or the signatures of the account's owners.

Without the contract of deposit, evidence of Ralph's intent in creating the U.S. Bank account was relevant in determining whether the account was with or without a right of survivorship. But Nanette argues that the failure to submit the contract into evidence precluded the county court from receiving extrinsic evidence of Ralph's intent under § 30-2719(b). In support of this argument, she cites to our statement in *Eggleston* that a court may look to extrinsic evidence to determine the intention of the depositor only when the contract of deposit is not substantially in the form outlined by § 30-2719(a).[11] But this statement was premised upon the contract of deposit's being in evidence. If the contract has been submitted into evidence and is substantially in the form provided by § 30-2719(a), the contract must control and extrinsic evidence is irrelevant. But without the contract of deposit before it, a court cannot determine whether the contract is substantially in the form provided by § 30-2719(a). Extrinsic evidence as to the depositor's intent then becomes relevant in determining the ownership of the account and its proceeds.

Because Richard was in possession of the U.S. Bank account and its proceeds, Nanette had the burden to establish

---

[11] See *Eggleston, supra* note 5.

that Ralph did not intend the account to be with a right of survivorship. But she again failed to meet this burden. Rather, the statements for the account listed Ralph and Richard as joint owners. And Richard testified that the account was opened with a right of survivorship. Thus, the account and its proceeds became the property of the surviving party or parties upon Ralph's death. Consequently, we find no merit to Nanette's assertion that the account was part of Ralph's probate estate.

## STATUS AND ACTIVITIES
### OF G&G

Nanette contends that the county court erred in concluding that she lacked standing to challenge the status and activities of G&G. She further claims that the court erred in failing to find that the activities undertaken by G&G after its dissolution were unlawful.

In addressing Nanette's claims, we assume without deciding that the county court was an appropriate forum in which to determine the lawfulness of G&G's activities and its corporate status. Clearly, that court had exclusive original jurisdiction to determine whether shares of G&G's stock owned by Ralph were assets of his probate estate.[12]

[6] Nanette's standing to challenge the status and activities of G&G turns upon whether it continued as a de jure or de facto corporation after its dissolution. As we expressed in *Ethanair Corp. v. Thompson*,[13] a private party may collaterally attack the legal stature of a corporate entity if it has been dissolved and retains neither a de jure nor a de facto existence. Because Nanette was not a shareholder, director, or creditor of G&G, as a private party, she could challenge the status and activities of G&G only if it retained neither a de jure nor a de facto existence after its dissolution.

[7] We agree with the county court that G&G continued as a de facto corporation after its dissolution. We have stated that a de facto corporation exists when there has been a good faith

---

[12] See Neb. Rev. Stat. § 24-517(1) (Cum. Supp. 2012).

[13] *Ethanair Corp. v. Thompson*, 252 Neb. 245, 561 N.W.2d 225 (1997).

attempt to organize the corporation, statutory requirements have been colorably complied with, and the corporation has exercised the functions or conducted the business that it was organized to perform.[14] G&G met all of these requirements.

The evidence received by the county court showed that G&G continued to conduct business and to observe the formalities of the corporate form notwithstanding its dissolution. G&G continued to hold annual meetings of its shareholders and board of directors, to elect officers, and to file annual income tax returns after its dissolution. It also continued to authorize and extend loans to its officers and other business entities, undertake small jobs, and conduct consulting work. We therefore conclude that G&G colorably complied with statutory requirements and conducted the business that it was organized to perform. Additionally, as G&G was incorporated under Nebraska law and dissolved without Richard's or Ralph's knowledge, we conclude that a good faith attempt to organize was made. We therefore find no merit to Nanette's assertion that G&G failed to meet the requirements for de facto corporation status.

But Nanette also argues that the de facto corporation doctrine no longer exists under Nebraska law. In support of this argument, she claims that the doctrine was abolished by the Legislature's enactment of the Business Corporation Act.[15] We disagree. We rendered our decision in *Ethanair Corp*. after the enactment of the Business Corporation Act[16] and acknowledged the doctrine's viability in that case.[17] Further, the Business Corporation Act contains no reference to the de facto corporation doctrine.[18] Although the act contains sections governing the commencement of corporate existence[19] and imposing liability upon persons purporting to act as or on behalf of a corporation

---

[14] See *id*.

[15] Neb. Rev. Stat. § 21-2001 et seq. (Reissue 2012).

[16] See, generally, 1995 Neb. Laws, L.B. 109.

[17] See *Ethanair Corp*., *supra* note 13.

[18] See § 21-2001 et seq.

[19] § 21-2019(1).

with knowledge that no incorporation has taken place,[20] these provisions do not address all of the issues responsible for the development of the doctrine. This is apparent in light of the present case where, unbeknownst to its directors and officers, a lawful corporation was involuntarily dissolved. We therefore reject Nanette's assertion that the de facto corporation doctrine has been abolished in Nebraska.

[8] Because G&G continued as a de facto corporation after its dissolution, Nanette, as a private party, lacked standing to contest its status and activities. We therefore find no error in the county court's order overruling her objection as to Ralph's shares in G&G. Although the court made an additional finding that G&G was expressly authorized to approve the transfers of Ralph's shares under § 21-20,155(2)(b), we see no need to comment on the correctness of this finding. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[21] Because Nanette lacked standing to attack G&G's status and activities, she necessarily lacked standing to challenge its approval of the stock transfers.

Finally, Nanette attempts to characterize her objection as merely alerting FNTC, as personal representative, to G&G's unlawful activities following its dissolution. This characterization is irrelevant. Nanette objected to G&G's status and activities; FNTC did not. Nanette was without standing to do so. These assignments of error lack merit.

WRIGHT NOTES

In his cross-appeal, Richard asserts that the county court erred in finding that Nanette was not liable on the Wright Notes and in approving their equal distribution in kind. In support of these assertions, he argues that the court should have applied Arizona law in analyzing Nanette's liability on the notes.

---

[20] § 21-2020.

[21] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

Before addressing Richard's specific arguments, we first observe that our probate statute expresses a preference for distributions in kind.

> (a) Unless a contrary intention is indicated by the will, the distributable assets of a decedent's estate shall be distributed in kind to the extent possible through application of the following provisions:
>
> . . . .
>
> (4) The residuary estate shall be distributed in kind if there is no objection to the proposed distribution and it is practicable to distribute undivided interests. In other cases, residuary property may be converted into cash for distribution.[22]

Thus, the ultimate focus is whether it is practicable to distribute undivided interests in the Wright Notes. Richard effectively asserted that distribution in kind was not practicable because, he claimed, Nanette was equally liable with her husband, John, on the notes.

[9-11] In addressing Richard's arguments, we must first determine whether the county court correctly found that a conflict of laws existed. We have previously noted that before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.[23] Thus, in answering any choice-of-law question, the court first asks whether there is any real conflict between the laws of the states.[24] An actual conflict exists when a legal issue is resolved differently under the law of two states.[25]

We agree with the county court that a conflict of laws existed between Nebraska and Arizona as to Nanette's liability on the Wright Notes. Other than the two repayment checks signed by Nanette, her signature does not appear on any of the documents evidencing the Wright Notes. And she testified

---

[22] Neb. Rev. Stat. § 30-24,104 (Reissue 2008).

[23] *American Nat. Bank v. Medved*, 281 Neb. 799, 801 N.W.2d 230 (2011).

[24] *Id.*

[25] *Id.*

that she was never asked to sign an obligation or a guarantee and had no intention of assuming John's obligations to Ralph. Thus, under Nebraska law, Nanette was not a comaker on the notes and could not be held jointly and severally liable.[26] But under Arizona law, we have observed that the absence of one spouse's signature on a promissory note does not bar the enforcement of a judgment on the note against the spouses' community property.[27] We therefore agree that a conflict of laws existed.

[12] For the resolution of conflict of laws involving contracts, this court has adopted the Restatement (Second) of Conflict of Laws § 188.[28] Under the Restatement, in the absence of an effective choice of law by the parties, a court is to consider several contacts in determining the law applicable to an issue.[29] These contacts include (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.[30]

With respect to the above factors, the county court found that Ralph was domiciled in Nebraska and was a resident of Nebraska. It further found that the debts were partially negotiated in Nebraska and that payments were made to Ralph in Nebraska. These factual findings were not clearly erroneous. We therefore agree that the majority of contacts weighed in favor of applying Nebraska law. Consequently, Nanette could not be held liable on the Wright Notes and the court did not err in approving their equal distribution in kind. These assignments of error also lack merit.

---

[26] See Neb. U.C.C. § 3-116 (Reissue 2001).

[27] See *American Nat. Bank, supra* note 23.

[28] Restatement (Second) of Conflict of Laws § 188(2) (1971). See *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005).

[29] See Restatement, *supra* note 28.

[30] *Id*.

## CONCLUSION

We find no error in the county court's disposition of the various objections raised by the beneficiaries of the estate. The order of the county court overruling the beneficiaries' objections and ordering FNTC to proceed with the proposed distribution of the estate is affirmed.

AFFIRMED.

WRIGHT, J., not participating.

———————————

STATE OF NEBRASKA, APPELLEE, V.
MATTHEW BERNEY, APPELLANT.

___ N.W.2d ___

Filed June 20, 2014.    Nos. S-13-829, S-13-830.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
4. **Sentences.** Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.
5. ____. Unless prohibited by statute or unless the sentencing court states otherwise when it pronounces the sentences, multiple sentences imposed at the same time run concurrently with each other.

Appeals from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed in part, and in part remanded for resentencing.

Thomas C. Riley, Douglas County Public Defender, and John P. Ashford for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.