DONNA EGGLESTON, SPECIAL ADMINISTRATOR OF THE LYDIA M.
MULLIS ESTATE, APPELLANT AND CROSS-APPELLEE, V.
ARDEITH L. KOVACICH, APPELLEE
AND CROSS-APPELLANT.
742 N.W.2d 471

Filed December 7, 2007.   No. S-06-684.

Phillip G. Wright and Casey E. Miller, of Wright & Associates, for appellant.

Jeanette Stull, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Donna Eggleston, as special administrator of the estate of Lydia M. Mullis, appeals the order of the district court for Otoe County imposing a constructive trust on one bank account referred to as "account 547-745" but not on any other account owned by Mullis at her death. Eggleston asserts that the court erred in failing to impose a constructive trust on all of Mullis' assets. Ardeith L. Kovacich cross-appeals and asserts that the court erred in imposing a constructive trust on

account 547-745. For reasons that differ from those of the district court, we affirm.

## II. STATEMENT OF FACTS

Mullis died in September 2000. She was survived by two daughters, Kovacich and Eggleston.

In 1999, Mullis met with an attorney to discuss estate planning. As a result of such planning, Mullis established a revocable trust into which she transferred a farm she owned near Cook, Nebraska. She also executed a will which provided that all assets she owned at death would become property of the trust. The terms of the trust provided that after Mullis' death, the trust would be divided equally between Kovacich and Eggleston. The trust document named Kovacich as the first successor trustee and Eggleston as the second successor trustee. Mullis' will named Kovacich as the personal representative and Eggleston as the alternate personal representative in the event Kovacich was unable or unwilling to serve. At the time Mullis executed the trust documents and the will, she also executed a durable power of attorney naming Kovacich as her attorney in fact.

Shortly after the documents noted above were signed, Mullis and Kovacich went to the Syracuse, Nebraska, branch of the First National Bank of Unadilla, now known as Countryside Bank (hereinafter the Bank), to open an account. The account was numbered 351-213 by the Bank. The signature card, sometimes referred to as the "contract of deposit," for account 351-213 named Mullis and Kovacich as owners of the account. The signature card included a section titled "Ownership of Account" which designated the account as a "Multiple-Party Account" and a section titled "Rights at Death" which designated the account as a "Multiple-Party Account With Right of Survivorship." A section of the signature card titled "Agency (Power of Attorney) Designation" was left blank. The signature card was signed by both Mullis and Kovacich.

On August 24, 2000, another account, numbered 547-745, was opened at the Bank. The signature card for account 547-745 named Mullis and Kovacich as owners of the account. The signature card for account 547-745 included a section

titled "Ownership of Account" which designated the account as a "Multiple-Party Account" and was initialed by Kovacich but not by Mullis. In the section titled "Rights at Death," the account was designated as a "Multiple-Party Account With Right of Survivorship" and was initialed by Kovacich but not by Mullis. A section of the signature card titled "Agency (Power of Attorney) Designation" was left blank. The signature portion of the card for account 547-745 was not signed by Mullis. Instead, beneath Mullis' typed name, Kovacich signed her own name followed by the designation "POA" which the parties and the district court have assumed without contradiction stands for "power of attorney."

Mullis died a few weeks after account 547-745 was opened. The inheritance tax worksheet prepared for her estate reported various accounts and bonds jointly owned by Mullis and Kovacich which totaled $148,650.72. Among the accounts were 351-213, which had a value of $13,889.66 at the date of Mullis' death, and 547-745, which had a value of $42,954.96 at the date of Mullis' death. The worksheet also showed that at her death, Mullis owned a farm valued at $60,000 and personal property valued at $3,000. The worksheet showed that the jointly owned accounts and bonds were to be distributed to Kovacich and that the farm and personal property were to be distributed evenly between Kovacich and Eggleston.

On October 1, 2003, Eggleston filed a complaint against Kovacich in district court. Eggleston had been appointed by the county court of Otoe County to act as special administrator of the estate. Eggleston alleged two causes of action. The first was for conversion. Eggleston alleged that Kovacich had used her position as Mullis' attorney in fact to convert to her own use various assets, including accounts 351-213 and 547-745 and the bonds that were used as the initial deposit for account 547-745. Eggleston alleged that the bonds had been held in the names of Mullis and Eggleston. As her second cause of action for imposition of a constructive trust, Eggleston alleged that the accounts and bond proceeds were placed in Kovacich's name under a constructive trust to be used for the benefit of Mullis during her lifetime and that at Mullis' death, such funds were to be divided equally between Kovacich and Eggleston according to the terms

of the trust. Eggleston sought an accounting of such funds and an order directing Kovacich to turn the funds over to the estate for proper distribution.

Following trial, the district court entered an order dated December 5, 2005. The court concluded that with respect to all accounts and bonds other than accounts 351-213 and 547-745, there was no evidence to suggest that Mullis intended anything other than that the accounts and bonds were to belong to Kovacich upon Mullis' death.

With respect to account 351-213, the court determined that the evidence, including testimony of the Bank employee who assisted in opening the account, indicated that the decision to designate this account as a joint account with Kovacich was Mullis' decision without undue influence by Kovacich. The court concluded that the evidence failed to show conversion on the part of Kovacich. The court also concluded that the evidence did not support a finding that account 351-213 was set up as an account "for the convenience of" Mullis.

With respect to account 547-745, the court found the evidence to be "more troublesome." The court in its order found the following: In the summer of 2000, Mullis was taken to live with Kovacich in Rock Springs, Wyoming, due to Mullis' declining health and her need for help in dealing with her affairs. In August 2000, Mullis returned to Nebraska to move into a nursing home in Syracuse. Mullis was concerned with the costs of the nursing home and decided to open a new account to take care of nursing home expenses and related finances. On August 24, the same day Mullis moved into the nursing home, account 547-745 was opened. The signature card for account 547-745 was not signed by Mullis but was signed by Kovacich pursuant to the power of attorney. The funds in the account came from two sources—U.S. bonds and a Commercial Federal Bank account. The Commercial Federal Bank account was jointly owned by Mullis and Kovacich and amounted to $25,248.08. The U.S. bonds that were liquidated to fund account 547-745 were held in the names of Mullis and Eggleston. There were also U.S. bonds held in the names of Mullis and Kovacich, but such bonds were not liquidated to fund account 547-745. Kovacich testified at trial that account

547-745 was set up the way it was "[b]ecause that's the procedure as far as being on an account with somebody in case they [sic] become disabled or something that you can take care of their [sic] financial things."

The court concluded in its order that when account 547-745 was set up, it was not Mullis' intention that Kovacich be entitled to all of the funds in the account at her death. The court in its order noted Kovacich's argument based on statute to the effect that Mullis' intention was not relevant because the account was set up as a multiple-party account with right of survivorship. Kovacich argued that under current Nebraska statutes, such an account belongs to the surviving party and that the intention of the party who created the account is not relevant. Kovacich noted that current Neb. Rev. Stat. § 30-2723(a) (Reissue 1995) provides that "on death of a party sums in deposit in a multiple-party account belong to the surviving party or parties." Kovacich contrasted the current statute to former Neb. Rev. Stat. § 30-2704(a) (Reissue 1989) which provided that sums in a joint account belonged to the surviving party or parties "unless there is clear and convincing evidence of a different intention at the time the account is created." Kovacich argued at trial and on appeal that because the current statute omits the language regarding the decedent's intention, the Legislature intended to eliminate consideration of the intention of the person creating the account. The court rejected Kovacich's arguments and concluded that under the current statutes, a court would be justified in receiving extrinsic evidence if it found that the account was opened solely for the convenience of the party who supplied the funds and was not intended as a gift or death benefit for the other party. The court concluded that account 547-745 was set up as a "convenience account" to take care of Mullis' financial needs while she was in the nursing home and was not intended as a gift or death benefit to Kovacich.

In view of its conclusions, the district court imposed a constructive trust on account 547-745 requiring Kovacich to hold Eggleston's interest in the account as trustee for the benefit of Eggleston as beneficiary and to account for all profits Kovacich received from the account. The court entered judgment in favor of Kovacich with regard to all accounts and bonds other than

account 547-745, and dismissed Eggleston's complaint with regard to such other accounts and bonds. The court reserved the issue of an accounting with regard to account 547-745.

A hearing on the accounting was held May 8, 2006. In an order entered May 26, the court noted Kovacich's argument that the funds held in the account should be prorated based on the sources of funds used to establish the account. The two sources were U.S. bonds owned by Mullis and Eggleston in the amount of $17,637.44 and a Commercial Federal Bank account owned by Mullis and Kovacich in the amount of $25,248.08. The court rejected Kovacich's argument and determined that Mullis' intention was to establish a new account and that the sources lost their identities when they were liquidated and put into the new account. The court determined that because account 547-745 was a "convenience account," the account should have been an asset of Mullis' estate. The court determined that the balance of account 547-745 at the date of Mullis' death was $42,954.96, and the court calculated interest of $9,770.70 from the date of death until the date of the order. The court therefore entered judgment against Kovacich and ordered her to pay $52,725.66 to Eggleston, as special administrator of the estate, for distribution from the estate.

Eggleston appeals, and Kovacich cross-appeals.

### III. ASSIGNMENTS OF ERROR

In her appeal, Eggleston asserts that the district court erred in failing to impose a constructive trust on all of Mullis' assets, including account 351-213 and the other accounts and bonds. In her cross-appeal, Kovacich asserts that the court erred in imposing a constructive trust on account 547-745.

### IV. STANDARDS OF REVIEW

An action to impose a constructive trust sounds in equity. *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one

version of the facts rather than another. *Ferer v. Aaron Ferer & Sons Co.*, 273 Neb. 701, 732 N.W.2d 667 (2007).

## V. ANALYSIS

The district court imposed a constructive trust on account 547-745, but did not impose a constructive trust on account 351-213 or any of the other accounts or bonds. In her appeal, Eggleston asserts that the court erred in failing to impose a constructive trust on all of the accounts and bonds, including account 351-213; in her cross-appeal, Kovacich asserts that the court erred in imposing the constructive trust on account 547-745. For the reasons discussed below, which differ in some respects from those of the district court, we conclude that because Eggleston established constructive fraud by virtue of Kovacich's use of her power of attorney to designate account 547-745 as a multiple-party account with right of survivorship, the court did not err in imposing a constructive trust on account 547-745. We further conclude that the district court did not err in declining to impose a constructive trust on account 351-213 and the other assets. In reaching these conclusions, we first analyze the cross-appeal and thereafter consider the appeal.

### 1. STANDARDS FOR IMPOSING CONSTRUCTIVE TRUSTS

In view of the contentions of the parties, we review the standards applicable to constructive trusts. A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). Intangible property and liquid assets such as stocks and bank and investment accounts may be held subject to a constructive trust. *Id.* Regardless of the nature of the property upon which the constructive trust is imposed, a party seeking to establish the trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained. *Id.*

Applying these standards in the present case, we determine that if Eggleston established that Kovacich obtained title to the accounts at issue by some form of actual or constructive fraud, misrepresentation, or abuse of an influential or confidential relationship such as her position as Mullis' attorney in fact, then a constructive trust would be an appropriate form of equitable relief with respect to the accounts at issue.

## 2. CROSS-APPEAL: DISTRICT COURT DID NOT ERR IN IMPOSING A CONSTRUCTIVE TRUST ON ACCOUNT 547-745

### (a) Cross-Appeal: District Court Erred in Concluding That Account 547-745 Was a Convenience Account and not a Multiple-Party Account With Right of Survivorship and Erred in Considering Extrinsic Evidence to Determine the Nature of the Account

At issue in this appeal is the proper characterization and treatment of accounts under article 27 of the Nebraska Probate Code contained in chapter 30 of the Nebraska Revised Statutes. In this connection, we examine under what circumstances a court may look to extrinsic evidence to determine the nature of an account. In the present case, we conclude that because the contract of deposit for account 547-745 contained provisions substantially in the form provided in Neb. Rev. Stat. § 30-2719(a) (Reissue 1995), the court should have determined from the face of the contract of deposit that account 547-745 was a multiple-party account with right of survivorship. The district court should not have looked to extrinsic evidence to determine the nature of the account and erred in concluding that account 547-745 was a "convenience account."

Under § 30-2719(a), a "contract of deposit that contains provisions in substantially the form provided in this subsection establishes the type of account provided, and the account is governed by the provisions of sections 30-2716 to 30-2733 applicable to an account of that type." Section 30-2719(a) contains a sample account form providing for designation of various features including ownership ("Single-Party Account" or "Multiple-Party Account"); rights at death (including, inter alia, "Right of Survivorship," "POD (Pay on Death) Designation," or single-party account passing at death as part of party's

estate); and "Agency (Power of Attorney) Designation" (allowing a party to designate an agent to make account transactions for the party but not have ownership or rights at death unless otherwise designated). Section 30-2719(b) provides that a "contract of deposit that does not contain provisions in substantially the form provided in subsection (a) of this section is governed by the provisions of sections 30-2716 to 30-2733 applicable to the type of account that most nearly conforms to the depositor's intent."

■ We read § 30-2719 as providing that extrinsic evidence of the depositor's intent as to what type of account was created is relevant only when the contract of deposit is not in substantially the form provided in § 30-2719(a). When the contract of deposit for an account is substantially in such form, the account will be treated as being the type of account designated on the form; if the contract of deposit is not in such form, then the depositor's intent is relevant to determine the type of account pursuant to § 30-2719(b).

As noted by Kovacich, prior to the 1993 revisions of the Nebraska Probate Code, § 30-2704(a) provided that "[s]ums remaining on deposit at the death of the party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention at the time the account is created.*" (Emphasis supplied.) Kovacich notes that the current statute omits the exception regarding a different intention. Further, current § 30-2723 merely states that "on death of a party sums on deposit in a multiple-party account belong to the surviving party or parties."

Under the prior statute, a court could examine extrinsic evidence to determine whether "the intention at creation of [a joint] account was other than the intention that all funds belong to the surviving party or parties to the account." *In re Estate of Lienemann*, 222 Neb. 169, 175, 382 N.W.2d 595, 600 (1986). Thus, under the former statute, a court could, as the court did in this case, determine that a joint account, known under the current statutes as a "multiple-party account," was opened solely as a convenience to allow the secondary owner to make transactions on behalf of the principal owner without there having

been an intention to give the secondary owner rights to the account at the principal owner's death.

The current statutes provide a mechanism for creation of an account wherein an agent may be permitted to write checks, but the agent would not stand to inherit the funds in the account, except by virtue of another vehicle for inheritance other than the form of the account. Under the current statutes, and consistent with the form contained in § 30-2719(a), an account may be set up as a single-party account with an agency designation. This structure for an agency account allows the agent to make account transactions without having an ownership interest or rights at death. See § 30-2719 and Neb. Rev. Stat. § 30-2720 (Reissue 1995). Under the current statutes, account holders have the opportunity to set up an account with an agency designation in order to have the desired features of a "convenience account." The purpose of the form provided under § 30-2719(a) appears to be to make clear account holders' intentions regarding issues of ownership, rights at death, and agency designation and, therefore, to make unnecessary an examination of extrinsic evidence to determine such intentions.

We note further that article 27 of the Nebraska Probate Code is based on the Uniform Probate Code's revised article VI. The comment to Uniform Probate Code § 6-212 (the counterpart of § 30-2723) states that the purpose of the drafters was

> to permit a court to implement the intentions of parties to a joint account governed by Section 6-204(b) [the counterpart of § 30-2719(b)] if it finds that the account was opened solely for the convenience of a party who supplied all funds reflected by the account and intended no present gift or death benefit for the other party.

Unif. Probate Code § 6-212, comment, 8 U.L.A. 441 (1998). We believe this comment is consistent with our reading above that intention is relevant only when the contract of deposit does not substantially follow the form set forth in § 30-2719(a) and is therefore governed by § 30-2719(b), the latter of which permits an assessment of "the type of account that most nearly conforms to the depositor's intent." When the contract of deposit is not in the form outlined in § 30-2719(a), a court may look to extrinsic evidence to determine whether the intention

of the depositor was to set up an account formerly commonly referred to as a "convenience account" but perhaps more aptly now referred to as an "agency account." See §§ 30-2719 and 30-2720. See, also, Introducer's Statement of Intent, L.B. 250, Judiciary Committee, 93d Leg., 1st Sess. (Mar. 10, 1993). However, if the contract of deposit is in the form provided in § 30-2719(a), then a court looks only to the contract of deposit and treats the account as the type of account designated in the contract of deposit.

The contract of deposit for account 547-745 in the present case was substantially in the form provided in § 30-2719(a). The signature card contained provisions regarding ownership, rights at death, and agency designation. Because the signature card in account 547-745 was in such form, under § 30-2719(a), the account was the type indicated on the card and the district court should not have looked to extrinsic evidence of intent to determine the type of account. The signature card indicated that account 547-745 was a multiple-party account with a right of survivorship. Sections of the card which could have been used to designate the account as an agency account were left blank.

We conclude that the district court erred in this case when it looked to extrinsic evidence to determine the nature of account 547-745. The district court further erred when it concluded, contrary to the designation in the signature card, that account 547-745 was a "convenience account" that at death would pass as part of Mullis' estate, rather that a multiple-party account with right of survivorship. To the extent that the district court rested its decision to impose a constructive trust based on its erroneous determination that account 547-745 was a "convenience account," such reasoning was in error. The district court erred when it failed to conclude that account 547-745 was a multiple-party account with right of survivorship.

(b) Cross-Appeal: District Court Did Not Err in Imposing
Constructive Trust on Account 547-745 Because
Eggleston Established Constructive
Fraud by Kovacich

Although the court erred in reasoning that a constructive trust should be imposed on account 547-745 because it was a

"convenience account," we nevertheless conclude that it was proper to impose a constructive trust because Eggleston established constructive fraud with respect to account 547-745. As noted above, a constructive trust may be imposed when it is found that property was obtained "by fraud, misrepresentation, or an abuse of an influential or confidential relationship." *Trieweiler v. Sears*, 268 Neb. 952, 978, 689 N.W.2d 807, 834 (2004).

In prior cases, we have noted that fraud may include constructive fraud and that abuse of an influential or confidential relationship may include using a power of attorney to make a gift to oneself. Constructive fraud generally arises from a breach of duty arising out of a fiduciary or confidential relationship. *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003). Constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud-feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Id.* Constructive fraud is implied by law from the nature of the transaction itself. The existence or nonexistence of an actual purpose to defraud does not enter as an essential factor in determining the question; the law regards the transaction as fraudulent per se. *Id.* Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. *Id.*

In an action in which relief is sought on account of alleged fraud, the existence of a confidential or fiduciary relationship, or status of unequal footing, when shown, does not shift the position of the burden of proving all elements of the fraud alleged, but nevertheless may be sufficient to allow fraud to be found to have existed when in the absence of such a status it could not be so found, and thus to have the effect of placing the burden of going forward with the evidence upon the party charged with fraud. *Crosby v. Luehrs, supra.* In situations involving an attorney in fact, we have determined that a prima facie case of constructive fraud is established if the plaintiff shows that the defendant held the principal's power of attorney and that the defendant, using the power of attorney, made a gift to himself or herself. *Id.* A fiduciary's acquisition of a right of survivorship in property, even absent a present possessory

interest, is generally sufficient to establish that a fiduciary has profited from a transaction. *Id.* The burden of going forward under such circumstances falls upon the defendant to establish by clear and convincing evidence that the transaction was made pursuant to power expressly granted in the power of attorney document and made pursuant to the clear intent of the donor. The fiduciary bears the burden of proving the fairness of the transaction. *Id.*

In the present case, Eggleston established that Kovacich held Mullis' power of attorney and that Kovacich, using the power of attorney, made a gift to herself via account 547-745. As in *Crosby v. Luehrs, supra,* Kovacich's acquisition of a right of survivorship in account 547-745 was sufficient to establish that she profited by opening account 547-745 using the power of attorney. Eggleston therefore established a prima facie case of constructive fraud.

After Eggleston established a prima facie case, the burden fell upon Kovacich to establish by clear and convincing evidence that the designation of account 547-745 as a multiple-party account with right of survivorship was (1) made pursuant to power expressly granted in the power of attorney document and (2) made pursuant to the clear intent of Mullis. With respect to the first requirement, the power of attorney document executed by Mullis named Kovacich as attorney in fact and stated that the attorney in fact had power to, inter alia, "make gifts to any person, including my attorney, if my attorney deems such gifts wise for tax and/or estate planning purposes, provided, however, that my attorney shall not make gifts to my attorney's creditors, my attorney's estate, or the creditor's [sic] of my attorney's estate." Although it is arguable that Kovacich established that she was authorized to make gifts to herself, we need not resolve this issue because Kovacich failed to establish that the gift of a right of survivorship in account 547-745 was made pursuant to the clear intent of Mullis. To the contrary, at trial, Kovacich testified that account 547-745 was established "[b]ecause that's the procedure as far as being on an account with somebody in case they [sic] become disabled or something that you can take care of their [sic] financial things." Thus, the evidence, including Kovacich's own testimony, indicated that Mullis intended the account to be

an agency account in which Kovacich had the power to make transactions but did not have an ownership interest.

Although extrinsic evidence of Mullis' intention regarding account 547-745 was not relevant to the question considered above regarding the type of account, the evidence is relevant to determining the existence of constructive fraud. In determining above that account 547-745 was a multiple-party account with right of survivorship, extrinsic evidence of intention was not relevant because the contract of deposit was in substantially the form provided in § 30-2719(a). However, in connection with the issue of constructive fraud, the question is not the type of treatment to be accorded account 547-745; instead, the question is whether Kovacich, using her power of attorney, designated account 547-745 as the type of account Mullis intended it to be.

Eggleston established a prima facie case of constructive fraud, and Kovacich failed to establish that Mullis' clear intent was to create the account as a multiple-party account with right of survivorship. Imposing a constructive trust on account 547-745 was a proper remedy for such constructive fraud, and we therefore conclude that the district court did not err in imposing a constructive trust on account 547-745.

### 3. APPEAL: DISTRICT COURT DID NOT ERR IN DECLINING TO IMPOSE A CONSTRUCTIVE TRUST ON ACCOUNT 351-213 AND OTHER ASSETS

In her appeal, Eggleston argues that the court erred in failing to impose a constructive trust on account 351-213 and the other accounts and bonds. We conclude that the district court did not err in determining that account 351-213 and the other accounts and bonds were designated with right of survivorship to Kovacich. We further conclude that the district court did not err in determining that the evidence did not establish that Kovacich used the power of attorney to open account 351-213 or any other accounts and that therefore, Eggleston has not established constructive fraud with respect to such accounts. We therefore conclude that the court did not err when it declined to impose a constructive trust on account 351-213 and the other accounts and bonds.

With respect to account 351-213, the contract of deposit was substantially in the form set forth in § 30-2719(a). The signature card indicated that the account was a multiple-party account owned by Mullis and Kovacich with right of survivorship. The signature card was signed by both Mullis and Kovacich. The section in which an agency designation could be made was left blank. On its face, account 351-213 was a multiple-party account with right of survivorship. See § 30-2719(a) and (b). With regard to the remaining accounts and bonds, the evidence indicates that the accounts and bonds were designated as giving a right of survivorship to Kovacich and that the related contracts of deposit were either substantially in the form set forth in § 30-2719(a) or, if such contracts of deposit were not in such form, that Eggleston failed to provide evidence pursuant to § 30-2719(b) that Mullis' intention was anything other than that Kovacich should have a right of survivorship. We therefore determine that account 351-213 and the other accounts and bonds provided a right of survivorship to Kovacich.

With respect to constructive fraud, we note that unlike the signature card for account 547-745 which Kovacich signed for Mullis using the power of attorney, the signature card for account 351-213 was signed by Mullis herself. Kovacich also signed as an owner, but she did not use the power of attorney to sign the card on Mullis' behalf. There is no indication that Kovacich opened any of the other accounts or bonds using the power of attorney. Because Kovacich did not use the power of attorney to open account 351-213 or the other accounts and bonds, Eggleston did not establish that Kovacich used her power of attorney to make a gift to herself with respect to such accounts. Eggleston therefore did not establish a prima facie case of constructive fraud with respect to such accounts. Furthermore, Eggleston did not establish constructive fraud in any other sense with respect to account 351-213 or the other accounts and bonds, nor did she establish conversion.

The evidence shows that Kovacich had a right of survivorship with respect to account 351-213 and the other accounts and bonds, and Eggleston did not establish constructive fraud with respect to account 351-213 and the other assets. We therefore conclude that the district court did not err when it declined to

impose a constructive trust on account 351-213 and the other accounts and bonds.

## VI. CONCLUSION

Because Eggleston established constructive fraud with respect to account 547-745 but failed to establish constructive fraud with respect to account 351-213 and the other accounts and bonds, we conclude that the district court did not err in imposing a constructive trust on account 547-745 but not on account 351-213 and the other assets. Although our reasoning differs from that of the district court, we affirm the district court's order.

AFFIRMED.