IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STEFAN V. LEWIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEBRA STEFAN, SUCCESSOR PERSONAL REPRESENTATIVE OF THE
ESTATE OF VIRGINIA HAWKINS, DECEASED, APPELLANT,
V.
ROGER LEWIS, APPELLEE.

Filed December 17, 2013.    No. A-13-353.

Appeal from the District Court for Hitchcock County: DAVID URBOM, Judge. Reversed and remanded with directions.

Nick Halbur, of Thompson Law Office, P.C., L.L.O., for appellant.

Maurice A. Green, of Green Law Offices, P.C., for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

INTRODUCTION

Virginia Hawkins added Roger Lewis as a joint owner to her Wells Fargo Bank account. After Hawkins' death, Lewis claimed ownership of the funds in the account. Richard Fuller, personal representative of Hawkins' estate, brought this equitable action in the district court for Hitchcock County against Lewis, seeking the return of funds withdrawn by Lewis after Hawkins' death. Debra Stefan later replaced Fuller as personal representative and was substituted as plaintiff. For the sake of simplicity, we have referred to the plaintiff-appellant in this case as Stefan. The district court entered judgment in favor of Lewis, finding that Hawkins and Lewis were joint owners of the account at the time of Hawkins' death and that Hawkins had not designated Lewis as an agent. Stefan appealed. Because we find that Hawkins did not intend for Lewis to have survivorship rights to the remaining balance in the account, and the account most nearly conforms to an agency account, we reverse the order of the district court and remand the

cause with directions to enter judgment in favor of Stefan for return of the sums remaining in the account at the time of Hawkins' death.

BACKGROUND

Hawkins died from complications with cancer on March 12, 2007. Hawkins died intestate, and her surviving heirs included Fuller, Stefan, another son, and the children of her deceased daughter. Prior to Hawkins' death, Lewis' wife was Hawkins' private paid caregiver. On March 2, 10 days prior to Hawkins' death, she added Lewis as a joint owner of the bank account in question. Also prior to Hawkins' death, Lewis signed the signature card for the account. After her death, the bank informed Lewis that the money was his. On April 17, Lewis consulted with the attorney for Fuller about Lewis' concern regarding any liabilities he might have because his name was on the account. The attorney asked Lewis to turn the account funds over to the estate, which Lewis did not do. On April 26, Lewis completed the bank form to change the account to his name as sole owner. At the time of Hawkins' death, there was a net balance in the account of approximately $96,000, which was transferred to Lewis.

In the operative complaint, filed September 10, 2007, Stefan alleged that Hawkins lacked donative capacity and was the subject of undue influence, that Lewis fraudulently induced Hawkins to place his name on the account as a joint owner, that the funds received by Lewis greatly exceeded any compensation to which he would have been entitled, and that Lewis breached a fiduciary duty to Hawkins. Stefan asked the district court to impose a constructive trust on all account proceeds and order that Lewis' name be removed from the account, along with other equitable relief.

Trial was held on November 6, 2012. The court heard testimony from several witnesses, including Lewis. We have discussed only those portions of the testimony relevant to the issues on appeal. The court also received various exhibits, including Lewis' deposition and a copy of the application adding Lewis' name to the account.

Lewis testified at trial that he knew Hawkins because his wife took care of her, but that he did not know Hawkins well. Lewis removed snow for Hawkins a couple of times but did not perform odd jobs for her on a regular basis. With respect to the account, Lewis testified that Hawkins asked him to be on the account, that he did not help in any way to create the joint account, and that Hawkins did it "all on her own."

In his deposition, Lewis testified about the Christmas prior to Hawkins' death, when she came to Lewis' house for breakfast. The record shows that Hawkins wrote a check to Lewis and his wife for $10,000 on December 25, 2006. According to Lewis, Hawkins asked him at that time about signing checks for her because it was becoming difficult for her to do so herself. Lewis testified, "And so that's what I thought I was doing. I was just getting on the account to sign checks." Lewis testified further and confirmed that his understanding was that he was placed on Hawkins' account to sign checks, but he also testified that Hawkins "said one time that I might get some money you know if she died or something. But I didn't know what she was talking about for sure."

Lewis testified that within a week before Hawkins passed away, he met Hawkins' children at her house and signed some checks totaling approximately $50,000. The checks were already made out and Lewis merely signed them. Lewis thought that the checks were for a few of

Hawkins' bills and gifts to Hawkins' children. Lewis testified that this was the only occasion he signed checks from the account prior to Hawkins' death. When Lewis was asked if he was "her power of attorney," he replied that he did not know what he was, that he went to the bank and was placed on Hawkins' account, and that all he knew at the time was that he was going to sign checks for her. Lewis later testified that, to his knowledge, he was never designated under any written power of attorney or healthcare power of attorney and was never named as a beneficiary of any insurance or other contract with respect to Hawkins. Lewis testified that after the bank informed him the proceeds in the account were his, he used some of the money to purchase things for his business and to pay bills and that there was approximately $8,000 remaining in the account.

An affidavit was received in evidence at trial from Robert Hawkins, the former spouse of Hawkins. He stated that he was personally familiar with the transactions surrounding the transfer of ownership interests in Hawkins' Wells Fargo Bank account to Lewis and that he believed this to have been a free and voluntary act on behalf of Hawkins. He stated that Hawkins made a promise of ownership transfer to Lewis for his assistance to Hawkins during her last fatal illness. Robert believed that Hawkins was repaying the kindness of Lewis for services provided to Hawkins.

The Wells Fargo Bank form on which Lewis was added to Hawkins' account is a preprinted form entitled "Consumer Account Application for Relationship Change." The name of the banker is listed at the top of the form as well as the account number of the account to be changed. In a section entitled "Relationship Changes," the form identifies "Virginia A. Hawkins" and "Roger D. Lewis" as the customers and lists their customer numbers. This section of the form also identifies Hawkins' and Lewis' "Current Relationship" as that of "Sole Owner" and "Not Relate," respectively, and their "New Relationship" as that of "Prim JntOr" and "Sec JntOr." This section indicates that signatures of the customers are not required. The next section of the form lists Hawkins' and Lewis' identifying information including addresses, telephone numbers, and taxpayer identification numbers. The lower half of the form includes sections with information to be completed only for customers in Wisconsin or Texas. The only mention of a "joint account with rights of survivorship" is in the section for "Texas use only." Finally, there is a section certifying the correctness of Hawkins' taxpayer identification number and of the correctness of the information supplied in the form; however, there are no signatures in this section. The form, instead, shows that the signatures were submitted manually.

On January 30, 2013, the district court entered an order finding in favor of Lewis. The court concluded that Hawkins and Lewis were joint owners of the account in question on the date of her death and that she did not designate him as an agent. Accordingly, the court entered judgment in favor of Lewis. Stefan subsequently perfected her appeal to this court.

## ASSIGNMENTS OF ERROR

Stefan asserts that the district court erred in failing to find that Lewis (1) was an agent of Hawkins, (2) owed a fiduciary duty to Hawkins in carrying out the responsibilities of his agency, and (3) breached his fiduciary duty to Hawkins through constructive fraud.

STANDARD OF REVIEW

An action to impose a constructive trust sounds in equity. *Johnson v. Anderson*, 278 Neb. 500, 771 N.W.2d 565 (2009). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013). Where credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007).

ANALYSIS

Stefan asserts that the district court erred in failing to find that Lewis was Hawkins' agent, that he owed a fiduciary duty to Hawkins as her agent, and that he breached that fiduciary duty through constructive fraud.

In order to prove that Stefan is entitled to judgment on the breach of fiduciary duty claim, Stefan needed to adduce evidence (1) that Lewis owed Hawkins a fiduciary duty, (2) that Lewis breached the duty, (3) that his breach was the cause of injury to Hawkins' estate, and (4) that the estate was damaged. See *McFadden Ranch v. McFadden*, 19 Neb. App. 366, 807 N.W.2d 785 (2011). Constructive fraud is the breach of a duty arising out of a fiduciary or confidential relationship. *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009). Stefan asserts that Lewis was acting as an agent for Hawkins with respect to the account in question and therefore owed Hawkins a fiduciary duty.

The district court found that Hawkins did not designate Lewis as an agent under Neb. Rev. Stat. § 30-2720 (Reissue 2008). Section 30-2720(a) provides that "[b]y a writing signed by all parties, the parties may designate as agent of all parties on an account a person other than a party." The authority of such an agent terminates upon the death of the sole party or last surviving party. § 30-2720(c). We agree that there is no writing signed by all parties designating Lewis as an agent on this account. However, that does not end our analysis. We must still determine the type of account at issue in order to determine whether Lewis was entitled to the funds upon Hawkins' death.

The district court applied Neb. Rev. Stat. § 30-2723 (Reissue 2008) to determine that the sums remaining in the account at the time of Hawkins' death belonged to Lewis, as joint owner of the account. Section 30-2723(a) provides, in part, "Except as otherwise provided in sections 30-2716 to 30-2733, on death of a party sums on deposit in a multiple-party account belong to the surviving party or parties." The district court also observed that property owned in joint tenancy passes by reason of the nature of the title to the surviving joint tenant upon the death of the other and does not pass by virtue of the provisions of the will of the first joint tenant to die. See *Norwest Bank Neb. v. Katzberg*, 266 Neb. 19, 661 N.W.2d 701 (2003).

Stefan argues that even though the bank employee who prepared the application form added Lewis as a joint owner, the evidence indicates that Hawkins intended to add Lewis to the account as her agent, and not as a joint owner with rights of survivorship.

There are additional statutory provisions beyond those noted by the district court that are applicable to this case. First, Neb. Rev. Stat. § 30-2718(a) (Reissue 2008) provides:

An account may be for a single party or multiple parties. A multiple-party account may be with or without a right of survivorship between the parties. Subject to subsection (c) of section 30-2723, either a single-party account or a multiple party account may have a POD [pay on death] designation, an agency designation, or both.

The account application document in the present case does not designate whether it is with or without a right of survivorship, and does not have a pay on death or agency designation.

Consideration of Neb. Rev. Stat. § 30-2719 (Reissue 2008) becomes relevant to our analysis. Section 30-2719 provides:

(a) A contract of deposit that contains provisions in substantially the form provided in this subsection establishes the type of account provided, and the account is governed by the provisions of sections 30-2716 to 30-2733 applicable to an account of that type.

UNIFORM SINGLE- OR MULTIPLE-PARTY ACCOUNT FORM

PARTIES (Name One Or More Parties):

............................................................    ...............................................................

OWNERSHIP (Select One And Initial):

..... SINGLE-PARTY ACCOUNT

..... MULTIPLE-PARTY ACCOUNT

Parties own account in proportion to net contributions unless there is clear and convincing evidence of a different intent.

RIGHTS AT DEATH (Select One And Initial):

..... SINGLE-PARTY ACCOUNT

At death of party, ownership passes as part of party's estate.

..... SINGLE-PARTY ACCOUNT WITH POD (PAY ON DEATH) DESIGNATION
(Name One Or More Beneficiaries):

............................................................    ...............................................................

At death of party, ownership passes to POD beneficiaries and is not part of party's estate.

..... MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP

At death of party, ownership passes to surviving parties.

..... MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP AND POD (PAY ON DEATH) DESIGNATION
(Name One Or More Beneficiaries):

............................................................    ...............................................................

At death of last surviving party, ownership passes to POD beneficiaries and is not part of last surviving party's estate.

..... MULTIPLE-PARTY ACCOUNT WITHOUT RIGHT OF SURVIVORSHIP

At death of party, deceased party's ownership passes as part of deceased party's estate.

AGENCY (POWER OF ATTORNEY) DESIGNATION (Optional)

    Agents may make account transactions for parties but have no ownership or rights at death unless named as POD beneficiaries. (To Add Agency Designation To Account, Name One Or More Agents):

............................................................    ............................................................

(Select One And Initial):

..... AGENCY DESIGNATION SURVIVES DISABILITY OR INCAPACITY OF PARTIES

..... AGENCY DESIGNATION TERMINATES ON DISABILITY OR INCAPACITY OF PARTIES

(b) A contract of deposit that does not contain provisions in substantially the form provided in subsection (a) of this section is governed by the provisions of sections 30-2716 to 30-2733 applicable to the type of account that most nearly conforms to the depositor's intent.

In our de novo review, we conclude that the contract in the case at hand does not contain provisions in substantially the form provided in § 30-2719 quoted above. As a result, we must determine the type of account that most nearly conforms to Hawkins' intent.

In *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007), the Nebraska Supreme Court examined § 30-2719 and considered the circumstances under which a court may look to extrinsic evidence to determine the nature of an account. In *Eggleston*, the contract of deposit for one of the accounts in question designated the account as a multiple-party account and in the section regarding rights at death, designated the account as a multiple-party account with right of survivorship. The section of the form for agency or power of attorney designation was left blank. In determining whether to impose a constructive trust in favor of the principal owner's estate, the trial court examined extrinsic evidence and determined that the account was set up as a convenience account to take care of the financial needs of the principal owner who resided in a nursing home prior to her death and was not intended as a gift or death benefit to the secondary owner. Accordingly, the trial court imposed a constructive trust on the account.

On appeal, the Nebraska Supreme Court determined that because the contract of deposit for the account was in substantially the form required by § 30-2719, the trial court erred in examining extrinsic evidence to determine the nature of the account. The *Eggleston* court discussed the statutory scheme in greater detail, stating:

    The current statutes provide a mechanism for creation of an account wherein an agent may be permitted to write checks, but the agent would not stand to inherit the funds in the account, except by virtue of another vehicle for inheritance other than the form of the account. Under the current statutes, and consistent with the form contained in § 30-2719(a), an account may be set up as a single-party account with an agency designation. This structure for an agency account allows the agent to make account transactions without having an ownership interest or rights at death. . . . Under the current statutes, account holders have the opportunity to set up an account with an agency designation in order to have the desired features of a "convenience account." The purpose of the form provided under § 30-2719(a) appears to be to make clear account holders'

intentions regarding issues of ownership, rights at death, and agency designation and, therefore, to make unnecessary an examination of extrinsic evidence to determine such intentions.

274 Neb. at 589, 742 N.W.2d at 480-81. The Supreme Court found that the trial court erred in examining extrinsic evidence to determine the type of account and in concluding, contrary to the designation on the form, that the account was a convenience account. However, the court held that extrinsic evidence was relevant to determine the existence of constructive fraud.

More recently, in *Krzycki v. Krzycki*, 284 Neb. 729, 824 N.W.2d 659 (2012), a case quite similar to the one before us, the Nebraska Supreme Court examined whether a contract establishing a particular Wells Fargo Bank account conformed to the statutory forms found in § 30-2719. In *Krzycki*, an individual signed the documents needed to open the account as "'Primary Joint Owner'" and deposited funds into the account from an insurance settlement which were made payable to the account for the benefit of a trust that was set up to hold funds from the settlement. 284 Neb. at 730, 824 N.W.2d at 661. A second individual signed the account documents as "'Secondary Joint Owner.'" *Id.* Upon the depositor's death, the second individual had the account transferred to her name only. Suit was filed by the trustee of the depositor-decedent's trust, claiming that the funds instead belonged to the trust, asserting causes of action for conversion and constructive trust. The second individual claimed that the account was owned by both individuals as joint tenants with rights of survivorship and that the trust had no interest in the funds. The trial court entered judgment in favor of the trustee, although for reasons which differed from those ultimately determined by the Supreme Court.

On appeal, the Nebraska Supreme Court in *Krzycki* reiterated that under the current statutory scheme and its holdings in *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007), evidence on the issue of the intent of the depositor may be presented when the provisions of a contract of deposit do not conform to the statutory forms provided in § 30-2719(a). The Supreme Court in *Krzycki* observed that the contract used the titles "Primary Joint Owner" and "Secondary Joint Owner," titles which are not listed or defined in § 30-2719. Finding that the contract establishing the bank account in that case did not conform to any of the statutory forms provided in § 30-2719, the Supreme Court then turned to a determination of the type of account that most nearly conformed to the depositor's intent.

The *Krzycki* court held that § 30-2719(b) creates no presumption in favor of a type of account and does not set any standards related to burdens of proof. The *Krzycki* court determined that in order to succeed in proving intent, pursuant to § 30-2719(b), a movant must prove his or her case by a greater weight of the evidence only. The Supreme Court then examined extrinsic evidence presented at trial by the trustee and found that the depositor did not intend to create a survivorship account as asserted by the second individual. This extrinsic evidence included the depositor's will, a divorce decree, and the trust documents. The Supreme Court determined that the account most nearly conformed to a single-party account with an agency designation, and thus, the depositor's death terminated the second individual's authority as an agent. Accordingly, the court concluded that the second individual did not have survivorship rights to the funds upon the depositor's death.

In the present case, the account application document does not conform to any of the statutory forms provided in § 30-2719. The form purports to change Hawkins' and Lewis'

relationship from "Sole Owner" and "Not Relate," respectively, to that of "Prim JntOr" and "Sec JntOr." None of these titles are listed or defined in § 30-2719. Other than the portion of the form for use by clients in Texas, there is no place on the form to indicate rights at death, and nowhere on the form is there a place to designate agency or power of attorney. Thus, it is necessary to examine the extrinsic evidence presented at trial of Hawkins' intent and determine what kind of statutory account most nearly conformed to that intent.

The evidence adduced by Stefan shows that Hawkins had a conversation with Lewis on or around December 25, 2006, about signing checks for her because it was becoming difficult for her to do so herself. The change in account ownership did not occur until March 2, 10 days before Hawkins' death. Lewis understood that he was just being added to Hawkins' account to sign checks for her. After being added to the account, Lewis signed checks on the account on only one occasion, which checks were for Hawkins' bills as well as some checks which had already been made out to Hawkins' children. This evidence suggests that Hawkins merely intended to create an agency relationship.

On the other hand, Lewis also testified that Hawkins said one time that he might get some money if she died, but he was not sure what she was talking about. Robert stated in an affidavit that he thought Hawkins was transferring ownership of the account to Lewis for his assistance to her. However, the record shows that, at best, Lewis provided very little assistance to Hawkins. Lewis provided no other evidence to support his position that Hawkins intended to create a survivorship account with Lewis. We recognize that Wells Fargo Bank in this case advised Lewis that he was entitled to the proceeds of the account; however, this does not amount to evidence of Hawkins' intent. We find that based upon the evidence at trial, Hawkins did not intend to create a survivorship account as Lewis asserts.

Based upon our de novo review of the record, we conclude that this account most nearly conforms to a single-party account with an agency designation. As such, the district court erred in finding that Lewis was a joint owner entitled to the sums in the account at Hawkins' death. And under § 30-2720(c), the "[d]eath of the sole party or last surviving party terminates the authority of an agent." See, also, *Krzycki v. Krzycki*, 284 Neb. 729, 824 N.W.2d 659 (2012). Thus, Hawkins' death terminated Lewis' authority as an agent and Lewis did not have survivorship rights to the funds upon Hawkins' death.

We therefore reverse the order of the district court and remand the cause with directions to enter judgment in favor of Stefan for the return of the net balance of $96,746.59 remaining in the account and received by Lewis following Hawkins' death.

## CONCLUSION

Because we find that Hawkins did not intend for Lewis to have survivorship rights to the remaining balance in the account, and the account most nearly conforms to an agency account, we reverse the order of the district court and remand the cause with directions to enter judgment in favor of Stefan for return of the net balance remaining in the account at the time of Hawkins' death.

REVERSED AND REMANDED WITH DIRECTIONS.